UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL PROPERTY COMMONLY KNOWN AS 901 N.E. LAKEWOOD DRIVE, NEWPORT, OREGON, In Rem, Defendant.

Claim of Patti BAILEY, Claimant.

Civ. No. 90–456–BE.

United States District Court,
D. Oregon.

July 3, 1991.

Charles H. Turner, U.S. Atty., D.Or. and Craig J. Casey, Asst. U.S. Atty., Portland, Or., for plaintiff.

Steven Smucker, Bates, Smucker & Reid, Portland, Or., for claimant Patti Bailey.

Richard S. Diaz, Newport, Or., for claimant Bank of Newport.

## OPINION

BELLONI, District Judge.

The matters before me are the following motions:

1) The motion of claimant Patti Bailey for an order compelling discovery of the identity of a confidential informant (# 19–1) or, in the alternative, for an order dismissing the action pursuant to Fed.R.Civ.P. 37 (# 19–2);

2) The motion of the United States to strike Bailey's affidavits, affirmative defenses and counterclaim (# 51);

3) The motion of Bailey to strike certain affidavits of Tracey Haig filed by the United States (# 69); and

4) The motion of the United States for summary judgment of forfeiture against Bailey (# 49).

## UNDISPUTED FACTS

This is an action for the civil forfeiture of a residence located at 901 N.E. Lakewood Drive, Newport, Oregon. There are two claimants, Patti Bailey, the owner of the house, and the Bank of Newport, which holds a mortgage on the house. A default judgment has been entered as to all other potential claimants. The forfeiture action was commenced on May 15, 1990, after the execution of a search warrant at the house on February 1, 1990. The search warrant was issued on the basis of an affidavit dated January 30, 1990, by Special Agent Tracey S. Haig of the DEA. During the execution of the search warrant a small amount of marijuana, cocaine residue and drug paraphernalia were seized.

The January 30 affidavit relies heavily on information from two confidential informants, particularly the informant identified as CI # 1. According to the January 30 affidavit, CI # 1 provided information that Doug Rider (Bailey's brother), Joseph Bailey (now Bailey's husband), Bailey, and others were members of a multi-state cocaine smuggling and distribution organization based in Newport. The January 30 affidavit states that CI # 1 provided particulars regarding Joseph Bailey, Bailey (then known as Patti Johnson), and the use of their residence at 901 N.E. Lakewood Drive, as well as other places, for cocaine distribution.

On the day the search warrant was executed, January 31, 1990, Agent Haig and Special Agent Jerry Pierce of the IRS interviewed Bailey at her workplace, the Bank of Newport. During that interview Bailey made certain admissions regarding the use and distribution of cocaine in 901 N.E. Lakewood Drive. Later on January 31, 1990, Joseph Bailey was interviewed by Agent Haig and Special Agent Jeffrey Wallenstrom of the DEA at 901 N.E. Lakewood Drive. At that time, Joseph Bailey was Bailey's fiance and lived with her at 901 N.E. Lakewood Drive. Bailey's brother, Doug Rider, was interviewed by Agent Haig and Special Agent Patrick Rowland of the Coast Guard on February 2, 1990. During their interviews Joseph Bailey and Doug Rider each made admissions regarding the use and distribution of cocaine in 901 N.E. Lakewood Drive.

When the complaint for forfeiture was filed in May, 1990, it was based upon a second affidavit by Agent Haig, dated February 26, 1990. This affidavit does not

include most of the information in the original affidavit, but is based on statements allegedly made in the interviews with Bailey and Joseph Bailey on January 31, 1990, and with Doug Rider on February 2, 1990.

Bailey and Joseph Bailey were married in April, 1990. No criminal charges have been filed against Bailey, Joseph Bailey or Doug Rider.

In July, 1990, Bailey filed an answer asserting seven affirmative defenses and a counterclaim. The affirmative defenses include the allegations that 901 N.E. Lakewood Drive was seized without due process of law in violation of the Fifth Amendment; that the United States is estopped from bringing this forfeiture action due to promises made by its agents; and that the forfeiture of 901 N.E. Lakewood Drive would be unconscionable because of the incidental and insignificant connection between the alleged illegal activity and the defendant property.

Bailey's counterclaim alleges that on January 31, 1990, agents promised Bailey that she would suffer no adverse consequences of any kind, in exchange for her cooperation. Bailey alleges that she fully cooperated with the agents, but that the United States commenced this action in violation of its agreement. Bailey seeks specific performance of the agreement and an award of her costs and attorney fees incurred in defending this action.

In October, 1990, Bailey filed a motion to compel discovery and attached as exhibits 13 affidavits from her friends and relatives. In December, 1990, Bailey was deposed. She testified about certain topics, but asserted her Fifth Amendment privilege against self incrimination 29 times. Bailey refused to answer all questions regarding her involvement with illegal drugs, including the admissions she allegedly made on January 31, 1990, but answered some questions regarding the basis for her counterclaim. Joseph Bailey was deposed on February 22, 1991. He asserted his Fifth Amendment privilege 74 times, and also asserted spousal privilege as to certain questions. Doug Rider was also deposed on February 22, 1991, and asserted his Fifth Amendment privilege 12 times, in addition to asserting a blanket Fifth Amendment privilege as to the questions that Joseph Bailey had refused to answer.

## DISCUSSION

### 1. *Bailey's Motion to Compel or Dismiss*

■ Bailey moves to compel disclosure of information regarding the unidentified informants referred to in Agent Haig's affidavit of January 30, 1990. Bailey asks for the names and addresses of the informants, and for an opportunity to depose the informants.

Bailey contends that under *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), the public interest in protecting the informant's identity is outweighed by Bailey's right to prepare her case. Bailey contends that many of the factual statements attributed to CI # 1 are untrue, and has submitted affidavits from various relatives and friends that purport to establish the untruth of various statements by CI # 1.

In oral argument on this motion Bailey did not challenge the validity of the search warrant, but contended that interviewing CI # 1 would help Bailey to attack the credibility of Agents Haig and Wallenstrom in connection with her estoppel defense and counterclaim. Bailey predicted that if CI # 1 was interviewed and confronted with Agent Haig's affidavits, CI # 1 would point out discrepancies between the information provided to Agent Haig and Agent Haig's affidavits.

In *Roviaro*, the Supreme Court stated that the qualified privilege to withhold the identity of an informant "must depend upon the particular circumstances of each case, taking into consideration ... the possible significance of the informant's testimony, and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 629. The other relevant factors include the likelihood of physical harm or retaliation against the informant or his family. *Id.*

The government has submitted a further affidavit by Agent Haig which states that the informants believe that they would be

subject to reprisals from the claimant if their identities are disclosed, and that Agent Haig believes this to be the case. The government's counsel also represented that CI #1 recently received a telephone call warning him not to show his face in Newport. The government offered to make Agent Haig available for an *in camera* interview regarding the danger to CI #1.

■ The person seeking disclosure of an informant's identity has the burden of proof to show that disclosure will be helpful to the defense or essential to the fair determination of the case. *United States v. Sanchez,* 908 F.2d 1443, 1451–52 (9th Cir.1990). In *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 43 (1st Cir. 1991), the First Circuit upheld the trial court's refusal to disclose an informant's identity. The court stated that the government's privilege to withhold the identity of informants applies in civil forfeiture cases, and is less likely to yield in civil than in criminal cases.

The government has made a showing that there is some potential danger to the informant if his or her identity is disclosed. I find that it is not necessary to hold an *in camera* interview in order to further explore this danger. Bailey, on the other hand, has not established more than a speculative possibility that disclosure of the informant's identity would help her case, and has not met her burden to show that disclosure is essential to the fair determination of her claim. I find that the minimal showing of danger by the government outweighs Bailey's showing of need for disclosure. Accordingly, Bailey's motion for discovery or dismissal is denied.

### 2. *The Government's Motion to Strike*

■ The United States moves pursuant to Fed.R.Civ.P. 12(f) and 37 to strike the thirteen affidavits filed by Bailey, her third affirmative defense (deprivation of property), her sixth affirmative defense (estoppel), her seventh affirmative defense (unconscionability), and her counterclaim for specific performance. The government contends that the affidavits should be stricken because Bailey has refused to submit to discovery or cross-examination regarding the averments in the affidavits. The government contends that the pleadings should be stricken because Bailey has refused to provide discovery regarding the basis for her affirmative defenses and counterclaim.

Bailey responds that this motion must fail because the government has not met the requirements of either Rule 12(f) or Rule 37. Rule 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

By its terms, Rule 12(f) applies only to pleadings and not to the affidavits filed by Bailey. Bailey filed her answer and counterclaim in July, 1990. The government filed its reply in October, 1990, more than six months before it filed this motion to strike. The government argues, however, that the motion is timely because the objectionable nature of the affirmative defenses and counterclaim became apparent only after the depositions of Bailey and some of her witnesses. Furthermore, the government argues that the court may exercise its own initiative to strike improper pleadings at any time.

■ Rule 12(f) is a rule aimed at inadequate or objectionable pleadings, and does not authorize the court to look beyond the pleadings or to grant discovery sanctions. Thus, although the government may have a legitimate grievance regarding Bailey's failure to provide discovery, Rule 12(f) does not appear to be an appropriate vehicle to deal with the problem.

Rule 37 provides that if a deponent fails to answer a question or if a party otherwise fails to provide discovery, the party seeking discovery may move for an order compelling discovery. Fed.R.Civ.P. 37(a). Under subsection (b)(2), if a party fails to

obey a court order to provide discovery, the court may order sanctions, including orders deeming certain facts to be established, or striking pleadings, or prohibiting a party from introducing designated matters in evidence.

■ Bailey contends that it would be inappropriate for this court to strike her pleadings or evidence under Rule 37, because the government never moved to compel discovery from her, and there has been no court order requiring her to provide discovery. The government responds that it is unnecessary to seek an order compelling discovery where the record is clear that a party would not provide such discovery even if ordered to do so. The government argues that Bailey's steadfast refusal to testify pursuant to the Fifth Amendment, and her attorney's instructions to other witnesses to refuse to testify, show that nothing would have been changed by a motion to compel.

The government relies on *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990). In that case, the government sought forfeiture of several parcels of land which were alleged to be the proceeds of drug transactions by the claimant, Laliberte. The government filed a motion for summary judgment and Laliberte filed an affidavit disputing many of the facts asserted by the government. The government attempted to depose Laliberte, who invoked his Fifth Amendment privilege in response to all questions concerning his involvement in drug trafficking, the sources of his income, and the use of narcotics proceeds to purchase the defendant properties. The government then moved to strike Laliberte's affidavit.

The First Circuit held that the district court had ample authority to strike Laliberte's affidavit after he invoked the Fifth Amendment and refused to answer deposition questions. 903 F.2d at 43. The court stated that it is well accepted that the direct testimony of a witness can be stricken if he invokes the Fifth Amendment on cross-examination to shield that testimony from scrutiny. *Id.* The court found no meaningful distinction between the refusal

to be cross-examined on statements made in direct testimony, and the refusal to provide discovery on subjects raised in earlier statements under oath such as affidavits. *Id.*

■ The courts consistently have held that the Fifth Amendment privilege may be used only as a shield and not as a sword that frees a claimant from adducing proof in support of his burden. *United States v. Rylander*, 460 U.S. 752, 758, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983) (tax case); *Cabral–Avila v. INS*, 589 F.2d 957 (9th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979) (civil deportation case); *United States v. One Pontiac Firebird*, CV88–681–FR, slip opin., 1990 WL 47343 (Frye, J., March 30, 1990), *aff'd*, 928 F.2d 409 (9th Cir.1991). A witness has the right to decline to answer questions on the basis of the Fifth Amendment, but this is not a substitute for evidence that would meet the burden of production. *Rylander*, 460 U.S. at 758, 103 S.Ct. at 1553.

Bailey asserted the Fifth Amendment in response to all deposition questions and interrogatories touching on the subject of her involvement with drugs, as well as any connection between the defendant property and drug transactions. Joseph Bailey and Doug Rider, who are represented by Bailey's counsel, also asserted the Fifth Amendment in these areas, and with respect to their own involvement with drugs. The 13 affidavits submitted by Bailey purport to show that Bailey and Joseph Bailey were not involved with drugs, that their income was legitimate, and that certain statements in Agent Haig's first affidavit which linked Bailey, Joseph Bailey and 901 N.E. Lakewood Drive with drugs were incorrect.

Bailey refused to be examined with respect to the contents of the thirteen affidavits, and there is no indication that she would waive her Fifth Amendment privilege if ordered to provide such discovery. Thus, with respect to the affidavits this case is indistinguishable from *United States v. Parcels of Land, supra,* 903 F.2d 36. The government's motion to strike is

**722**

granted with respect to the thirteen affidavits.

■ Bailey refused to answer deposition questions regarding the factual basis for her third affirmative defense, deprivation of property without due process, on the basis that the questions called for a legal opinion. Bailey was not asked any questions referring to her seventh affirmative defense, unconscionability. It is not clear to me that Bailey would refuse to answer questions on these subjects if I issued an order compelling discovery. Therefore, with respect to the third and seventh affirmative defenses, I decline to grant sanctions under Rule 37 in the absence of a previous court order.

■ Bailey did answer some questions regarding her sixth affirmative defense, estoppel, and her counterclaim for specific performance. She testified that Agents Haig and Pierce promised that nothing would happen to her if she cooperated and was truthful. Bailey testified that she was cooperative and truthful, and that although the agents did not define their terms, she took their promise to mean that nothing adverse would happen to her, to her house, or to Joseph Bailey. Bailey asserted her Fifth Amendment privilege in response to questions regarding her specific statements during the interview on January 31, 1990, and questions regarding her discussion of the interview with Joseph Bailey. Bailey also refused to answer questions regarding the accuracy of the statements reportedly made by Joseph Bailey and Doug Rider in their interviews.

Thus, Bailey has provided some discovery as to the basis for her counterclaim and sixth affirmative defense. However, she has refused to answer questions which could reflect on her credibility and the accuracy of the information which she provided during the interview on January 31, 1990. It is clear to me that Bailey would not waive her Fifth Amendment privilege, even under court order, because the information requested by the government could subject her to criminal penalties, and the government has not offered immunity to Bailey.

In order to be successful in her counterclaim and sixth affirmative defense, Bailey must convince the factfinder that the agents made the alleged promises, and that Bailey complied with the terms of the agreement. The only persons present during Bailey's interview on January 31, 1990, were Bailey and Agents Haig and Pierce. Thus, the credibility of Bailey and the two agents is the crucial issue. Bailey has made conclusory statements that she was fully cooperative and truthful, but has not allowed the government to delve into the credibility of these statements.

■ I find that Bailey has refused to provide discovery as to crucial elements of her counterclaim and sixth affirmative defense. Although striking her counterclaim and sixth affirmative defense in their entirety is a harsh remedy, I can find no lesser sanction which would preserve the government's right to discovery and cross-examination. The purpose of cross-examination is to test the credibility of the witness and the truthfulness of her earlier testimony. *Lawson v. Murray,* 837 F.2d 653, 656 (4th Cir.1988). Striking all of the testimony of a witness may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process. *Id.* (citing *United States v. Lord,* 711 F.2d 887, 892 (9th Cir.1983)). Where, as in this case, the proof of a claim rests entirely on the testimony of one person, there is no useful distinction between striking that person's testimony and striking the claim.

Accordingly, the government's motion to strike Bailey's counterclaim and sixth affirmative defense is granted.[1]

1. As an alternate ground for the dismissal of Bailey's counterclaim and estoppel defense, I find that Bailey's testimony regarding the basis for her counterclaim and estoppel defense should be disregarded due to her refusal to answer the government's questions regarding essential elements of the counterclaim and defense. Thus, Bailey has failed to present evidence which could meet her burden of proof, and summary judgment against the counterclaim and estoppel defense is appropriate. *See United States v. 15 Black Ledge Drive,* 897 F.2d

### 3. *Bailey's Motion to Strike*

 Bailey moves to strike the affidavits of Agent Haig dated January 30, 1990, February 26, 1990, and January 3, 1991, and deposition exhibits 1 (DEA reports of interviews of Bailey, Joseph Bailey and Doug Rider), 4 (DEA report of interview of Gary Fisher on February 7, 1990), 7 (Haig affidavit of January 30, 1990) and 8 (Haig affidavit of February 26, 1990), on the grounds that they contain inadmissible hearsay.

 Bailey is correct in stating that hearsay is generally not admissible in a motion for summary judgment under Fed. R.Civ.P. 56. However, in an action for civil forfeiture the government may meet its burden of proof to establish probable cause by presenting hearsay evidence which would normally be inadmissible if the evidence is legally sufficient and reliable in light of the "aggregate of the facts." *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1434 (9th Cir.1985).

In determining whether hearsay evidence is reliable, the court may consider factors such as the source of the evidence and whether it is consistent with other evidence. *United States v. One 56–Foot Yacht Named Tahuna*, 702 F.2d 1276, 1284 (9th Cir.1983). In this case, the challenged materials are affidavits and reports prepared by Agent Haig. Bailey has presented no evidence that Agent Haig's presentation of these materials was untruthful or inaccurate, although her counsel has voiced suspicions of Agent Haig's credibility and the credibility of CI # 1. Bailey has pointed out no inaccuracies in the interview reports or affidavits prepared after January 30, 1990, although she has made an unsupported claim that the report of her interview on January 31, 1990, is inaccurate in some respects.

A review of the affidavits and reports shows that with the exception of Agent Haig's affidavit of January 30, 1990, the information contained in the affidavits and reports is remarkably consistent, down to most details of the transactions and episodes recounted. There is no evidence in the record that any discrepancies are due to the unreliability of Agent Haig, rather than to inconsistent statements by the informants or interview subjects.

 Agent Haig's affidavit dated January 30, 1990, is somewhat distinguishable. This affidavit relies heavily on information from unidentified confidential sources, and describes large scale drug smuggling operations and transactions that are not mentioned in any of the other affidavits or reports. Bailey has not moved against the search warrant issued on the basis of this affidavit, and I make no finding regarding its validity. However, the reliability of the information in the affidavit of January 30, 1990, has not been established to my satisfaction, and I will not consider it in connection with the present motion for summary judgment.

Accordingly, Bailey's motion to strike is granted with respect to Agent Haig's affidavit of January 30, 1990, and denied with respect to the other affidavits and exhibits.

### 4. *The Motion for Summary Judgment*

 The United States moves for summary judgment of forfeiture against Bailey's claim to the defendant property. Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although the court must evaluate every motion for summary judgment by viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion, in a civil forfeiture case the summary judgment procedures under Rule 56 must necessarily be construed in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein. *Tahuna, supra*, 702 F.2d 1276, 1281 (9th Cir.1983). Those procedures are quite summary, especially when compared to normal civil ac-

---

97, 102–03 (2d Cir.1990) (testimony of claimant stricken and summary judgment granted on innocent owner defense where claimant submitted a conclusory affidavit but asserted the Fifth Amendment when asked related questions during deposition).

tions. *United States v. One 1975 Mercedes 280S*, 590 F.2d 196, 199 (6th Cir. 1978).

■ In a civil forfeiture case the government has the initial burden to demonstrate probable cause to believe that the defendant property is forfeitable. *United States v. Padilla*, 888 F.2d 642, 643 (9th Cir.1989). In this case, the government has alleged that the defendant property is forfeitable pursuant to 21 U.S.C. §§ 881(a)(7) and 801 *et seq.*, because it was used to facilitate the possession, use, distribution and sale of a controlled substance.

■ The government can show probable cause that the defendant is subject to forfeiture by producing evidence which creates a reasonable ground for belief that the defendant was used to facilitate the possession, use, distribution or sale of a controlled substance. *Yukon Delta Houseboat, supra*, 774 F.2d at 1434. This belief must be more than mere suspicion, but can be based on less than prima facie proof. *Id.* Circumstantial evidence is sufficient to establish probable cause in a forfeiture proceeding. *United States v. $93,-685.61 in United States Currency*, 730 F.2d 571, 572 (9th Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984).

■ Property may be forfeited when the aggregate of the facts establishes that the property was used to facilitate drug transactions, even though no drugs were found on the premises. *Padilla, supra*, 888 F.2d at 643. The fact that the amount of drugs involved in such transactions was small is not a defense to forfeiture, provided that the government establishes probable cause to believe that there is a substantial connection between the property to be forfeited and narcotics transactions. *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986).

■ If the government meets its burden to submit evidence supporting a finding of probable cause, the burden shifts to the claimant, who must produce evidence which 1) refutes the government's showing of probable cause; or 2) provides a defense to the forfeiture. *Tahuna, supra*, 702 F.2d at 1281. In contrast to the standard for a showing of probable cause, a defense to forfeiture must be established by a preponderance of the evidence, and all of the evidence relied upon must be admissible. *United States v. $5,644,540 in United States Currency*, 799 F.2d 1357, 1362 (9th Cir.1986). An unrebutted showing of probable cause is sufficient by itself to warrant a judgment of forfeiture. *Id.*

Agent Haig's affidavit dated February 26, 1990, and the reports of Agents Haig and Pierce regarding the interview with Bailey support a finding of probable cause to believe that 901 N.E. Lakewood Drive was used to facilitate the possession, use, distribution and sale of controlled substances. First, during the execution of the search warrant a small amount of marijuana, cocaine residue and drug paraphernalia were seized at 901 N.E. Lakewood Drive. Second, Agents Haig and Pierce reported that during her interview on January 31, 1990, Bailey admitted that cocaine was possessed, used, distributed and sold in 901 N.E. Lakewood Drive.

Bailey reportedly stated that she and her former husband used cocaine periodically at the house; that she continued to use cocaine after her divorce and during her subsequent relationship with Joseph Bailey; that Joseph Bailey bought cocaine from his supplier on certain occasions at the house; that Joseph Bailey sold cocaine to their friends in the house; that Bailey and Joseph Bailey supplied cocaine to Doug Rider on 40 to 50 occasions; that Bailey did not personally sell cocaine, but had used cocaine socially at the house, and had given cocaine to friends at the house; and that there were never more than a few "eight balls" [one eighth of an ounce of cocaine] in the house at any time.

These statements are corroborated by the statements of Joseph Bailey and Doug Rider during their interviews. Joseph Bailey identified two sources of supply for cocaine and stated that he bought eight balls of cocaine from one supplier at the house on two occasions. He also stated

that he sold between one quarter gram and one gram of cocaine to Doug Rider from the house approximately 10 times, and that he sold cocaine to other friends from the house on occasion. Doug Rider stated that he bought cocaine from Bailey and Joseph Bailey at the residence approximately 10 times, and that he never saw more than one eighth of an ounce of cocaine at the house.

In addition, Gary Fisher, a Coast Guard employee who formerly lived in Newport, stated that he was a friend of Bailey and her first husband, and then Bailey and Joseph Bailey. Fisher stated that on various occasions he was given cocaine by Bailey or her first or second husband at the house. Fisher also stated that one time he saw a bag of cocaine at the house that was about "two and a half fingers" full [somewhat less than an ounce].

This evidence establishes ample probable cause to believe that 901 N.E. Lakewood Drive was used to facilitate the possession, use, distribution and sale of cocaine. Although, as noted above, the fact that a small amount of drugs was involved does not exempt a property from forfeiture, the evidence here supports a finding that more than a minuscule amount of cocaine was possessed and distributed at 901 N.E. Lakewood Drive on numerous occasions over a period of years.

Bailey did not present evidence controverting the statements attributed to her, Joseph Bailey, Doug Rider and Gary Fisher during their interviews. Bailey has not presented evidence in support of any defense to forfeiture, such as innocent ownership.[2] Bailey alleged as an affirmative defense that her statements were taken in violation of her Fifth Amendment right against self incrimination and her Sixth Amendment right to counsel. However, Bailey has not asserted these defenses in opposition to the motion for summary judgment. Moreover, I find that even if Bailey's statements were disregarded, the evidence presented by the government would be sufficient to support a finding of probable cause. Finally, Bailey has not presented any evidence in support of her remaining affirmative defenses.

Therefore, the government has made an unrebutted showing of probable cause, and is entitled to summary judgment against Bailey's claim. *See $5,644,540 in United States Currency*, 799 F.2d at 1362.

CONCLUSION

The motion of Bailey for an order compelling discovery of the identity of a confidential informant (# 19–1) or, in the alternative, for an order dismissing the action (# 19–2) is denied.

The motion of the United States to strike Bailey's affidavits, affirmative defenses and counterclaim (# 51) is granted as to the affidavits, the sixth affirmative defense and the counterclaim, and is denied as to the third and seventh affirmative defenses.

The motion of Bailey to strike certain affidavits of Tracey Haig filed by the United States (# 69) is denied except as to the affidavit dated January 30, 1990.

The motion of the United States for summary judgment against Bailey's claim (# 49) is granted. Counsel for the United States shall submit an appropriate form of judgment.

---

**2.** As discussed above, Bailey presented evidence in support of an estoppel defense and counterclaim, but I have stricken the defense and counterclaim, and will not consider Bailey's evidence on those issues.