## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 11 2016, 8:40 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Peter D. Todd
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darian S. Bowman, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 11, 2016 <br><br> Court of Appeals Case No. 20A05-1503-CR-111 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Evan S. Roberts, Judge <br><br> Trial Court Cause No. 20D01-1306-FB-71 |

**Pyle, Judge.**

# Statement of the Case

Darian S. Bowman ("Bowman") appeals, following a jury trial, his convictions for Class C felony intimidation[1] and Class D felony pointing a firearm at another person.[2] During the jury trial, the trial court struck a portion of the testimony of the victim, who was a defense witness, after she invoked protection from self-incrimination under the Fifth Amendment to the United States Constitution during cross-examination. Bowman argues that the trial court erred by striking the victim's testimony. Because Bowman raises grounds on appeal that he did not raise at trial, we conclude that he has waived appellate review of this argument. Waiver notwithstanding, we conclude that the trial court did not abuse its discretion by striking the testimony, and we affirm his convictions.[3]

We affirm.

# Issue

Whether the trial court erred by striking a portion of the testimony of the victim, who was a defense witness, after she invoked protection from self-incrimination under the Fifth Amendment to the United States Constitution.

---

[1] IND. CODE § 35-45-2-1. We note that, effective July 1, 2014, a new version of the intimidation statute was enacted and that Class C felony intimidation is now a Level 5 felony. Because Bowman committed his offense in 2013, we will apply the statute in effect at that time.

[2] I.C. § 35-47-4-3. Pursuant to the 2014 version of this statute, this Class D felony pointing a firearm at another person offense is now a Level 6 felony.

[3] Bowman was also convicted of Class B felony unlawful possession of a firearm by a serious violent felon, but—as he pled guilty to this charge—he does not appeal this conviction.

## Facts

In February 2013, Bowman was married to April Sylvester, but the two were separated and not living together. At that time, Sylvester lived in Elkhart, Indiana with her three children.

Around 2:30 a.m. on February 4, 2013, Sylvester called 911 and reported that Bowman had gone to her house, pulled a gun on her, threatened to kill her, and then left in his truck.[4] Elkhart Police Corporal Jackie Davis ("Corporal Davis") was dispatched to Sylvester's house and arrived within five minutes. When the corporal arrived, she noticed recent tire tracks in the snow on Sylvester's driveway. Sylvester, who was shaking and upset and had tears in her eyes, told Corporal Davis that Bowman had come to her house wanting to get back together with her and that she had rebuked Bowman's request. Sylvester told the corporal that Bowman then went to his truck, returned with a nine-millimeter handgun, and pointed it at her, saying, "I'm going to kill you. If I can't have you then nobody can have you[.]" (Tr. 260). Sylvester told Corporal Davis that she then closed the door and called for the police. As Sylvester stood next to Corporal Davis, she received multiple threatening texts from Bowman, and the corporal saw the texts. Sylvester also wrote out a sworn witness statement and recounted the events of February 4, 2013.

---

[4] A redacted version of the CD recording of the 911 call was admitted into evidence, but the trial court reporter did not transmit the CD in the Exhibit Volume.

[5] Thereafter, on June 7, 2013, the State charged Bowman with Count I, Class B felony unlawful possession of a firearm by a serious violent felon; Count II, Class C felony intimidation; and Count III, Class D felony pointing a firearm at another person. On October 28, 2013, during a bail reduction hearing, Sylvester testified under oath that she had lied about the events of February 4, 2013. Specifically, Sylvester testified that Bowman had not gone to her house, had not pointed a gun at her, and had not threatened to kill her.

[6] The trial court held a three-day jury trial on December 16-18, 2015. While discussing procedural matters before jury selection, the State informed the trial court that Sylvester had stated that she was not going to testify for the State and that she would, instead, testify for the defense. The State indicated that Sylvester "ha[d] represented repeatedly that she lied to the police" and that if she were to testify during trial that she had lied to police in reporting a crime— thus, admitting to a crime—then the trial court should appoint counsel to advise her of the potential consequences of doing so. (Tr. 193). After Bowman's counsel stated that he would call Sylvester as a defense witness, the trial court advised Sylvester of her Fifth Amendment rights and appointed a public defender to represent and advise her. After Sylvester met with the public defender, he informed the trial court that he had advised Sylvester "that any testimony she [would] give[] could be construed as perjury or lead to false informing charges." (Tr. 206).

[7] Before the State called its first witness, it informed the trial court that it would need to call Sylvester to the stand for the limited purpose of having her identify

Bowman. During Corporal Davis's testimony, Sylvester's statements made to the 911 operator and to Corporal Davis on the night of the offenses were admitted into evidence under the exited utterance exception to hearsay.

[8] Prior to the State calling Sylvester as a witness for identification purposes, the trial court, outside the presence of the jury, again advised Sylvester of her Fifth Amendment rights. Thereafter, Sylvester testified, and her testimony was limited to an in-court identification of Bowman. The State did not question her regarding the events or Bowman's actions on February 4, 2013. Bowman made no objection at the time of Sylvester's testimony and did not cross-examine her.

[9] After the State rested, Bowman moved for a directed verdict, which the trial court denied. Bowman then moved for a mistrial, arguing that he had a "right to see, confront and cross examine his accuser" because the scope of his cross-examination was limited to her identification testimony. (Tr. 359). The State responded that Bowman could confront his accuser by calling her as a witness and pointed out that "the State ha[d] an ethical obligation not to suborn perjury," which is what the State "anticipate[d] would [have] happen[ed] if [it] called her to testify any further." (Tr. 360). The trial court then denied Bowman's motion for mistrial.

[10] Thereafter, Bowman called Sylvester as a defense witness. On direct examination, she testified that, at the time of the offenses, she and Bowman were separated but had been "trying to work things out." (Tr. 364). She also testified that Bowman had not come to her house on the night of the offenses,

had not pointed a gun at her, and had not threatened her. Additionally, Sylvester acknowledged that she had called 911 but testified that she called and made a report out of "revenge" because she had learned that Bowman was having an affair. (Tr. 376). Sylvester admitted that she had given a false statement to the 911 operator and to the police, and she testified that she had done so because she "just wanted [Bowman] to go away at the time." (Tr. 380). Furthermore, she testified that she had "made . . . up" the fact that he had a nine-millimeter handgun. (Tr. 380).

[11] When the State cross-examined Sylvester, she admitted that she had called 911 to report that Bowman had gone to her house, pulled a gun on her, threatened to kill her, and then left in his truck. Sylvester, however, testified that "what [she had] said was a lie." (Tr. 438). She claimed that she "called 911 out of spite" and because she wanted to have Bowman arrested. (Tr. 437).

[12] The second day of trial ended before the State finished its cross-examination of Sylvester. The following day, before Sylvester retook the witness stand and outside the presence of the jury, Sylvester's appointed public defender requested the trial court to again admonish Sylvester regarding her rights. The trial court then re-advised Sylvester regarding her Fifth Amendment rights. Thereafter, when testifying, Sylvester admitted that she had told Corporal Davis that Bowman went to her house, pointed a nine-millimeter handgun at her, threatened to kill her, and told her, "If I can't have you, nobody can[.]" (Tr. 490). She then testified that she had "made up . . . the whole story." (Tr. 490).

[13]    Thereafter, when the State questioned Sylvester about her account of Bowman's actions to Corporal Davis on the evening of the offenses, the following exchange occurred between the State and Sylvester:

> [State:] And isn't it true that you never changed your story at all during the time that the officer was at your home?
>
> [Sylvester:] I changed it later on and you guys wouldn't accept it.
>
> [State:] That's not what I asked you, Mrs. Sylvester.
>
> [Sylvester:] You're manipulating me.
>
> [State:] Mrs. Sylvester –
>
> THE COURT: Okay.
>
> [Sylvester:] I plead the Fifth.
>
> THE COURT: All right.
>
> [Sylvester:] I plead the Fifth.
>
> THE COURT: All right. I think this would be a good time to take –
>
> [Sylvester:] Badgering me.
>
> THE COURT: – a recess. Stop. Ms. Sylvester, please stop.

(Tr. 491-92). The trial court removed the jury from the courtroom and instructed Sylvester's appointed public defender to remove her from the courtroom for consultation. Thereafter, the State moved to strike Sylvester's testimony in its entirety except for her identification testimony when called as a State's witness, arguing that her invocation of her Fifth Amendment privilege

had precluded "the opportunity to meaningfully cross examine" her direct examination testimony. (Tr. 497).[5]

[14] In response to the State's motion, Bowman argued that Sylvester "ha[d] already perjured herself" and had "pretty well waived the Fifth Amendment privilege[,]" and he asserted that the trial court should "direct her to continue to testify[.]" (Tr. 498). Additionally, Bowman argued that the State should "take [the] witnesses as they come" and that he did not "believe that the State ha[d] . . . as its remedy, the right to entirely stricken [sic] the record of the alleged victim in this case[.]" (Tr. 498-99). Bowman asserted that, if the trial court were to grant the motion to strike Sylvester's testimony, it would "cause unnecessary confusion and prejudice in the mind of the jury, such that they c[ould] not render a fair and impartial judgment[.]" (Tr. 499). He also argued that "in terms of his constitutional rights and in mind of keeping [sic] a fair trial," striking her testimony was "not [an] appropriate remedy" because she could go back on the stand.[6] (Tr. 500). Bowman suggested that if, upon returning to the stand, Sylvester would be "obstinate in her responses to the State's questions on further cross examination," the State would have an alternate remedy of directing her to answer the question or it could rephrase the question. (Tr. 501).

---

[5] In support thereof, the State cited to *Drake v. State*, 555 N.E.2d 1278 (Ind. 1990), for the proposition that it was "not reversible error for the Court to strike in its entirety the testimony of a critical defense witness who invoked the right against Fifth Amendment self-incrimination during cross examination[.]" (Tr. 497).

[6] Bowman did not specify any specific constitutional rights or specifically refer to a federal or state constitutional provision.

The trial court granted the State's motion to strike Sylvester's testimony, thus excluding the requested portion of her testimony from evidence.

[15] Subsequently, Bowman moved for a mistrial, arguing that he was unable "to conduct a proper and fair defense" and to "confront and cross examine his accuser." (Tr. 509). He also asserted that Sylvester should be allowed to recant her accusations against him, and he suggested that the State had "unintentionally" intimidated the witness. (Tr. 509). In response, the State argued that this case did not involve a mere recantation because Sylvester had invoked her Fifth Amendment privilege "as she ha[d] the right to do[.]" (Tr. 510). The State also pointed out that Bowman had been provided the opportunity to cross examine Sylvester, and it asserted that there had "been no implication of witness intimidation[.]" (Tr. 510). The trial court denied Bowman's mistrial motion.

[16] Immediately thereafter, Bowman's counsel asked the trial court to "recall" Sylvester to the witness stand and to be allowed to continue her cross-examination where the State had stopped.[7] (Tr. 511). Sylvester's appointed public defender brought her to the witness stand and asked her if she wished to continue to invoke her Fifth Amendment right to remain silent, and she responded that she did. Bowman then renewed his motion for mistrial, and the trial court denied it.

[7] Sylvester had not been released from her subpoena.

[17] Upon bringing the jury back to the courtroom, the trial court informed the jury that Sylvester had invoked her Fifth Amendment privilege and that part of her testimony had been stricken and was not to be considered during deliberations. Bowman then presented a witness, who testified that Bowman was at her house on the evening of the offenses and that she did not see him leave the house.

[18] Thereafter, outside the presence of the jury, Bowman moved to admit a redacted version of his October 28, 2013 bail reduction hearing, during which Sylvester testified that she had lied about the events of February 4, 2013. The trial court denied Bowman's motion. Bowman then renewed his motion for a mistrial, which the trial court denied.

[19] Thereafter, still outside the presence of the jury, Bowman informed the trial court that he was thinking of recalling Sylvester as a witness. The trial court ruled that Bowman would not be allowed to do so because Sylvester had "indicated unequivocally that she wanted to invoke the protection of the Fifth Amendment and she did not wish to testify." (Tr. 566). Bowman then called Sylvester's son and his stepson, Hunter Williams ("Williams") as a witness. Williams testified that he had not seen Bowman at the house on the evening of the offenses.

The jury found Bowman guilty as charged on Counts II and III. Thereafter, the trial court proceeded with the bifurcated trial on Count I. After the State had presented its evidence and rested, Bowman pled guilty to Count I.[8]

At the sentencing hearing, the trial court imposed an aggregate sentence for Bowman's three convictions of twenty (20) years, with seventeen (17) years executed[9] and three (3) years suspended to probation.[10] Bowman now appeals.

## Decision

Bowman appeals his convictions for Count II, Class C felony intimidation, and Count III, Class D felony pointing a firearm at another person.

Before we address Bowman's appellate argument, we note that he has raised incomplete strands of arguments and has failed to set forth a standard of review for any of these arguments, which is contrary to our Indiana Appellate Rule 46(A)(8)(b) ("The argument must include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the

---

[8] As part of his plea, Bowman and the State agreed that the trial court would order his sentences in Counts I, II, and III to be served concurrently and that sentencing would, otherwise, be left to the trial court's discretion.

[9] The trial court ordered that Bowman's first fourteen years of his executed sentence would be served in the Department of Correction while the remaining three years would be served, if he qualified, on either work release or home detention.

[10] At the sentencing hearing, the trial court also sentenced Bowman for drug-related offenses to which he pled guilty in another cause, 20D01-1208-FD-918. He does not appeal the sentence in that cause because he apparently waived his right to appeal his sentence as part of his guilty plea.

issues."). Nevertheless, from what we can untangle from Bowman's appellate brief, it appears that he attempts to argue that: (1) the trial court and the State intimidated and pressured Sylvester into testifying; (2) Bowman was forced to call Sylvester as a defense witness; and (3) the trial court erred by striking Sylvester's testimony after she invoked her Fifth Amendment privilege against self-incrimination. With the exception of the last argument, we conclude that he has waived appellate review of the other arguments due to his lack of cogent argument. *See* Ind. App. R. 46(A)(8)(a) (providing that an appellant's argument must be supported by cogent reasoning); *Shane v. State*, 716 N.E.2d 391, 398 n. 3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).[11]

[24] Thus, we turn to Bowman's challenge to the trial court's decision to grant the State's motion to strike Sylvester's testimony after she invoked her Fifth Amendment privilege against self-incrimination. As this decision was, ultimately, an evidentiary ruling to exclude evidence, we note that the admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002).

[25] Here, on the night of the offenses, Sylvester told the 911 operator and Corporal Davis that Bowman had threatened her and pointed a gun at her, and she gave

---

[11] Moreover, the appellate record does not support his contentions that the trial court and the State intimidated and pressured Sylvester into testifying or that he was forced to call Sylvester as a defense witness.

a written police statement in which she swore under oath to the same facts. However, when testifying as a defense witness at trial, Sylvester recanted the veracity of these prior statements and asserted that Bowman had not gone to her house on the night of the offenses and had neither threatened her nor pointed a gun at her. When the State cross examined her about her direct examination testimony, she invoked her Fifth Amendment privilege and refused to further testify.

[26] "The Fifth Amendment's Self-incrimination Clause provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Bleeke v. Lemmon*, 6 N.E.3d 907, 925 (Ind. 2014) (quoting U.S. CONST. amend. V). "[T]his prohibition not only permits a person to refuse to testify against himself at a criminal trial . . . but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Id.* (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)) (internal quotation marks omitted).

[27] Bowman does not challenge the fact that Sylvester was protected under the Fifth Amendment from testifying about her recantation of the statements. Nor does he challenge the possibility that Sylvester's admission that she had lied to the police and in her sworn police statement could have subjected her to prosecution for perjury or false informing. Additionally, he does not appeal the denial of his various motions for mistrial. Instead, Bowman's appellate challenge to the trial court's ruling to strike a portion of Sylvester's testimony is

premised upon his general assertion that it resulted in a violation of his right to present a defense and his right to due process.

[28] "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Kubsch v. State*, 784 N.E.2d 905, 923-24 (Ind. 2003) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)) (internal quotation marks omitted). "We recognize . . . that the Sixth Amendment assures a criminal defendant of the right to mount a defense—but that right must coexist with the government's right to test the truth of testimony proffered by the defense through the medium of cross-examination." *United States v. Castro*, 129 F.3d 226, 230-31 (1st Cir. 1997), *cert. denied*. Additionally, we recognize that "[a] fundamental element of due process is the right of the accused to present witnesses in his own defense[,]" however, a "defendant's right to present witnesses . . . is tempered by the witness's Fifth Amendment privilege not to provide incriminating testimony." *United States v. Johnson*, 437 F.3d 665, 677 (7th Cir. 2006).

[29] Bowman has waived appellate review of the trial court's evidentiary ruling in which it struck a portion of Sylvester's testimony. When the State moved to strike Sylvester's testimony after she invoked her Fifth Amendment privilege, Bowman's objection and argument against the motion to strike was not based

on the grounds that he now asserts on appeal.[12]  Instead, he argued that Sylvester had waived her Fifth Amendment privilege and should be directed to testify.  Accordingly, he has waived appellate review of this argument.  *See Lampkins v. State*, 682 N.E.2d 1268, 1274 (Ind. 1997) (holding that "a defendant may not present one ground for an objection at trial and advance another ground on appeal" and that an attempt to raise a new ground on appeal will result in waiver), *modified on reh'g on other grounds* by 685 N.E.2d 698 (Ind. 1997); *Harvey v. State*, 546 N.E.2d 844, 846 (Ind. 1989) (holding that a "defendant's failure to present a record demonstrating the specific objection waives the consideration of the error he alleges"); *see also Stroud v. State*, 809 N.E.2d 274 (Ind. 2004) (explaining that a death penalty defendant had waived review of his claim that his due process rights were violated where he did not object on that ground at trial).

[30]  Waiver notwithstanding, the trial court's decision to strike part of Sylvester's testimony was not erroneous and did not violate Bowman's right to present a defense.

[31]  "[W]hen a defense witness in a criminal prosecution cuts off cross-examination by invocation of [a Fifth Amendment] privilege, the defendant's constitutional right to present witnesses in his own defense is implicated."  *Lawson v. Murray*, 837 F.2d 653, 655 (4th Cir. 1988), *cert. denied*.  However, the right to present a

---

[12] While Bowman alluded to a right to present a defense when making his second motion for mistrial, he has not raised an appellate argument challenging the denial of this mistrial motion.

defense "is not unlimited and may 'bow to accommodate other legitimate interests in the criminal trial process.'" *Horton v. Litscher*, 427 F.3d 498, 504-05 (7th Cir. 2005) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

[32] Our Indiana Supreme Court has explained that a trial court errs if it does not grant a party's request to admonish a jury after a witness, who the parties knew would invoke his Fifth Amendment privilege, was called to the stand and invoked the privilege. *See, e.g.*, *Tucker v. State,* 534 N.E.2d 1110, 1111 (Ind. 1989) (holding that it was improper for a prosecutor to call as a witness a codefendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify and that the trial court erred by refusing the defendant's request "to admonish the jury to disregard the situation"). *See also United States v. Castro*, 129 F.3d 226, 231 (1st Cir. 1997) (explaining that "trial courts should not permit witnesses who have indicated that they will refuse to answer questions on legitimate Fifth Amendment grounds to take the witness stand and assert the privilege in front of the jury) (citing *Namet v. United States*, 373 U.S. 179, 186 (1963)), *cert. denied*.

[33] While striking the testimony can be considered a "drastic remedy[,]" a trial court's act of "[s]triking all of the testimony of the witness may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process." *Lawson*, 837 F.2d at 656. Indeed, "the purpose of cross-examination is to test the credibility of the witness and the truthfulness of [her] earlier testimony[,]" and "[i]mportant public policy protects even the prosecution's right to fair trials and the pursuit of truth, so that

a similar principle should govern whether the recalcitrant witness was offered by the prosecution or by the defendant." *Id.*

[34] Here, the record reveals that the parties were aware that Sylvester did not want to testify for the State and that she would likely invoke her Fifth Amendment privilege upon cross-examination by the State. When that situation came to fruition, the State then moved to strike her testimony, and the trial court granted the State's request. Bowman, however, has failed to show that the trial court's evidentiary ruling to strike the testimony was an abuse of discretion where the State's ability to cross-examine the witness was undermined by the witness's invocation of her Fifth Amendment privilege. Accordingly, we conclude that the trial court did not err in its ruling, and we affirm Bowman's convictions.

[35] Affirmed.

Baker, J., and Bradford, J., concur.