**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Charles NORWOOD,
Defendant-Appellant.**

**No. 90–8190.**

United States Court of Appeals,
Fifth Circuit.

May 3, 1991.

whether restitution should be calculated on the over valuated price or the inflated loan price.

Bill Fitzgerald, Austin, Tex. (court-appointed), for defendant-appellant.

Michael C. Norwood, pro se.

LeRoy Morgan Jahn, C. Larry Mathews, Jr., Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARZA, POLITZ and JONES, Circuit Judges.

GARZA, Circuit Judge:

Defendant was convicted of possession with intent to distribute crack cocaine by a jury. He appeals his conviction claiming the trial court erred in striking the testimony of Yvonne Sheffield. Because the trial court should not have stricken the testimony, the judgment is REVERSED and the case is REMANDED for a new trial.

## Facts and Prior Proceedings

Michael Charles Norwood appeals from a final judgment in a criminal case pursuant to 28 U.S.C. § 1291. Norwood was convicted following a jury trial of possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1).

The facts of this case are largely undisputed. Two undercover officers purchased crack cocaine from several individuals at a housing project. The officers then radioed descriptions of the dealers to an identification team. One of the dealers was described as a black male, approximately five foot eight and 160 pounds, wearing a white baseball cap, a white muscle shirt and blue shorts. Within minutes of the cocaine purchase, the identification team entered the housing project and accosted Norwood who was wearing a white baseball cap, a white muscle shirt and blue shorts. After an unfruitful frisk, the identification team took Norwood's picture. Later, the undercover officers identified Norwood's photo from a photo array as the dealer who sold them the crack cocaine. Norwood was subsequently arrested for possession with intent to distribute cocaine.

During his trial, Norwood called Yvonne Sheffield as his only witness and her testimony tended to exonerate Norwood. Specifically, Sheffield stated she and Norwood were on the playground by the apartments watching her son play. She was present when the police took Norwood's picture and approximately twenty to thirty minutes prior to that time. At no time did she see Norwood buy or sell crack on the evening in question. After cross-examining Sheffield concerning her direct testimony, the government requested a recess to research Sheffield's background for the purpose of attacking her credibility.[1] The court granted a recess until the following day.

The government's research revealed Sheffield had been convicted twice for felony robbery and once for lying to a police officer. The government had the right to

---

1. The prosecutor asked the court for "a little bit of time to research on the background [of Yvonne Sheffield]."

attack Sheffield's credibility by cross-examining her concerning these convictions. Fed.R.Evid. 609(a). Sheffield's parole officer was brought to court so he could testify as to her criminal background if necessary. When the trial resumed, Sheffield was not present. She had not been under a subpoena nor ordered by the court to return. Since the government had not fully completed its cross-examination of Sheffield, the court instructed the jury to disregard Sheffield's direct testimony over the defendant's objection. Norwood was convicted by the jury and now brings his case to us for review.

### Did the trial judge err in striking the testimony?

■ "Striking the testimony of a witness is a drastic remedy. It is not to be lightly done." *Lawson v. Murray,* 837 F.2d 653, 656 (4th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). In this case the government sought to explore the witness's credibility by cross-examining her only with respect to collateral matters. The inability to inquire into such matters on cross-examination does not warrant striking a witness's testimony unless the purpose of the process is frustrated. *See Lawson,* 837 F.2d at 656; *U.S. v. Castello,* 830 F.2d 99, 101 (7th Cir.1987); *United States v. Gullett,* 713 F.2d 1203, 1209 (6th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984); *United States v. Phillips,* 664 F.2d 971, 1028 (5th Cir. Unit B 1981), *cert. denied, sub nom. Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1981).

■ In this case, the government merely wanted to question Sheffield about her prior convictions in order to impeach her credibility. The credibility could just as easily have been impeached by calling the parole officer to the stand[2] and having him testify about Sheffield's prior convictions. The quest for truth would not have been undermined if the testimony had been left alone. *See United States v. Kikumura,* 698 F.Supp. 546, 554 (D.N.J.1988) (explaining that a key inquiry in determining whether striking of testimony is the appropriate sanction is whether "the court's quest for truth" would be undermined if the testimony were allowed to stand). Consequently, it was error for the trial judge to strike the testimony. The objective could have been obtained at a lesser cost to the defendant.[3] As the *Lawson* court stated, striking the testimony of a witness is a drastic remedy. Further, the fact it was the testimony of a defense witness means this tactic should be used only if prejudice to the government will result if the testimony is allowed to stand. This is not to imply, however, there are no circumstances which would warrant defense testimony to be stricken.[4]

### Conclusion

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for a new trial.

2. The government did not call the parole officer to testify, however, because the judge instructed the jury to disregard the testimony of Yvonne Sheffield.

3. Before he began his closing argument, defense counsel noted for the record Sheffield had returned. At this time, the trial judge could have reopened the evidence and the government could have elicited the testimony from Sheffield. *See United States v. Thetford,* 676 F.2d 170, 182 (5th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983) ("A motion to reopen is clearly within the discretion of the trial court. In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion."). The government made no motion to reopen, however.

4. *Lawson* is an example of one case where the trial judge was correct in striking defense testimony where the defendant selectively invoked his Fifth Amendment privilege against self-incrimination. In that case, the purpose of cross-examination was frustrated.