**Robert DENHAM, Jr., Petitioner–Appellant,**

v.

**George DEEDS, Warden, et al., Respondents–Appellees.**

No. 90–15798.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 5, 1991.*

Decided Jan. 27, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth   Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Robert C. Denham, Jr., pro se.

Karen M. Wright, Deputy Atty. Gen., Las Vegas, Nev., for respondent-appellee.

Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.

WIGGINS, Circuit Judge:

Appellant Robert Denham appeals the district court denial of his petition for a writ of habeas corpus. Denham was convicted in 1981 by a Nevada jury of robbery with use of a deadly weapon, attempted robbery with a deadly weapon and conspiracy to commit robbery. After several unsuccessful appeals and petitions in Nevada state courts, appellant petitioned in 1988 for a writ of habeas corpus in U.S. District Court. On December 19, 1989, a United States Magistrate recommended denial of the writ. On April 13, 1990, the United States District Court ordered the adoption of the magistrate's report and recommendation. The petition was denied April 16, 1990. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 2254 and we affirm.

The evidence at trial established the following. Patricia Beazer testified that she and her husband, Lynn Beazer, arrived in Las Vegas from Canada on December 21, 1980 at about 6 p.m. As they were about to check into their room at the Circus Circus Hotel, they were approached by a young man with a gun who demanded their money. Patricia Beazer looked around and saw a second young man approach them. This second man struck her and took her husband's driver's license and traveler's checks. She said a third man stood a short distance away, possibly as a lookout.

Two weeks later, Patricia Beazer identified appellant from a photo line-up and again at trial as the individual who held a gun on her during the robbery.

Lynn Beazer testified to substantially the same facts as his wife, except that he said he was struck in the throat and that the robbers took cash in addition to the license and traveler's checks. He, too, identified appellant in a photo line-up.

Another state witness, Mary Danielson, testified that she was employed at the California Hotel on December 22, 1980, when appellant attempted to cash three traveler's checks in Beazer's name. She said that the signatures did not match, so she called Central Credit. She said she was told the checks were stolen.

Jerome Snopil testified that he was a security guard at the California Hotel at the same time and he was called by Danielson about the stolen checks. Snopil testified that appellant began tearing up the checks and he was taken to the security office.

Officer Van Cleef of the Metropolitan Police Department testified that he went to the California Hotel on December 22, 1980 and arrested appellant. He testified that he knew, before arriving at the hotel, that at least two males had participated in the robbery. When he arrived at the hotel, he observed two young men, acting in a suspicious and nervous manner, standing near the security office where appellant was be-

ing held. As Van Cleef approached them, they began to run. He caught them at the hotel exit, where he identified them as Morris Hunter and Michael McDaniels. Van Cleef questioned them, determined he had insufficient evidence to hold them, and released them. On the way to the police station, appellant told Van Cleef that Hunter and McDaniels had given appellant the traveler's checks he had tried to cash.

Next, Barbara Gordon, appellant's mother, testified that appellant was home all night on December 21, 1980, beginning at 5:15 p.m.

Appellant then testified that he was home all day on December 21, 1980. He said that late in the evening of December 22, he went with his brother, Joseph Gordon, to Las Vegas, where they met two individuals appellant said he had never seen before. Appellant said the individuals gave him the traveler's checks and the Canadian driver's license, and he agreed to cash the checks.

Appellant then wanted to call Joseph Gordon as a witness. The court appointed counsel for Gordon and then held a hearing out of the jury's presence. Counsel advised Gordon to invoke his fifth amendment rights and refuse to answer questions that might incriminate him. Gordon testified that he had spoken to Morris Hunter on December 22, when Hunter had shown him the checks, the license and Canadian currency. Gordon said that Hunter and Michael McDaniels asked him if he could do something with the checks. Gordon said he refused, but later returned with appellant. Gordon said he then watched Hunter and McDaniels give appellant the traveler's checks and the license.

On cross-examination, Gordon refused to answer several questions relating to his testimony on direct. When the prosecutor tried on cross-examination to flesh out the details of Gordon's relationship with Hunter and McDaniels, the phone conversation between them and the circumstances surrounding his introduction of his brother to McDaniels and Hunter, Gordon refused to answer, invoking his fifth amendment rights. The court ruled, therefore, that Gordon would not be allowed to testify before the jury.

## I. *Denial of Compulsory Process Claim*

■ Appellant's first contention is that the trial court improperly refused to allow the testimony of Joseph Gordon, a proposed defense alibi witness. This, appellant claims, was a denial of his right of compulsory process. As discussed above, the court held a "dry run" of Gordon's testimony away from the jury because it feared he would invoke his fifth amendment right against self-incrimination on cross-examination with regard to non-collateral matters. Gordon did exactly as the court anticipated. Because the prosecution would be denied an opportunity to cross-examine the witness, necessary to truthful factfinding, the trial court excluded Gordon from testifying.

Most cases involve defendants seeking to strike the direct testimony of prosecution witnesses who invoke the fifth amendment when cross-examined by defense counsel. The general rule in such cases calls for exclusion of the direct testimony unless the refusal to answer affects only collateral matters.

"[I]f the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part."

*U.S. v. Cardillo*, 316 F.2d 606, 611 (2d Cir.1963), *cert. denied*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55. *Cardillo* and cases like it do not address the tension inherent, when the witness is defendant's, between the prosecution's need to cross-examine and the defendant's right to call witnesses on her own behalf. The right to present witnesses "has long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). The compulsory process clause of the Sixth Amendment also supports the same right. *Taylor v. Illinois*, 484 U.S. 400, 409, 108

S.Ct. 646, 652, 98 L.Ed.2d 798 (1988). Therefore, a trial court must safeguard to the extent possible a criminal defendant's right to present her story to the jury. We have previously found error when a district court struck testimony of a defense witness because of a refusal to answer questions dealing with collateral issues. *United States v. Lord*, 711 F.2d 887, 892 (9th Cir.1983).

Where a defense witness refuses to answer questions that go to the heart of the direct testimony on a central issue, however, the truth-seeking function of the court is impaired. "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Taylor*, 484 U.S. at 412–13, 108 S.Ct. at 654–55, *quoting United States v. Nobles*, 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975). Where a defense witness's invocation of Fifth Amendment protection against self-incrimination amounts to a refusal to be cross-examined, the testimony cannot be considered reliable. We therefore join with those circuits that have permitted the exclusion of a defense witness's testimony when the witness has refused on cross-examination to respond to questions on non-collateral matters. *See United States v. Esparsen*, 930 F.2d 1461, 1469–70 (10th Cir.1991); *United States v. Doddington*, 822 F.2d 818, 822 (8th Cir.1987); *United States v. Frank*, 520 F.2d 1287, 1292 (2d Cir.1975).

■ In this case, the questions which Gordon refused to answer were germane to his testimony on direct examination and therefore not collateral. The witness's testimony is not reliable without meaningful cross examination, and therefore, was properly excluded.

## II. *Insufficiency of Evidence Claim*

Denham additionally claims that his conviction was based on insufficient evidence. The proper standard for reviewing such a claim is whether "after reviewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ A review of the trial record makes it clear that the evidence is sufficient to support Denham's conviction. The victims independently identified Denham as the person who held a gun on them and demanded their money. He was further identified by witnesses as cashing the stolen traveler's checks. Finally, from the evidence, it is reasonable to infer that more than one person was involved in the robbery, which supports the conspiracy conviction.

## III. *Photographic and Trial Identification Claim*

■ Denham further claims that the photographic identification and the in-person trial identification denied him due process. To constitute a due process violation, the photographic identification procedure must be so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). In determining the reliability of a photographic lineup, the Supreme Court has set forth five factors to be considered: 1) the witness' opportunity to view the suspect at the time of the crime, 2) the witness' degree of attention to the perpetrator at the time of the crime, 3) the accuracy of any earlier description of the suspect, 4) the level of certainty demonstrated at the confrontation, and, 5) the lapse of time between the time of the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972).

The Beazers' testimony indicates that the robber held the gun on them long enough to ask them twice for their money and then to argue with Lynn Beazer when he said he never carried any money on his person. The robber was very close to both Beazers when he threatened them. Patricia Beazer testified that she had focused on the robber's face because she wanted to determine

whether he was serious about the threat. Both Beazers independently identified appellant as the robber who held the gun. Both testified that they positively identified appellant, a few days after the incident, from a photo line-up. Both then again identified appellant at trial. Considered in the light of the *Neil v. Biggers* factors, the identification was reliable.

## IV. *Ineffective Assistance of Counsel Claim*

■ A defendant claiming ineffective assistance of counsel must make a two-fold showing. He must demonstrate that counsel's actions were "outside the wide range of professionally competent assistance," and that the defendant was prejudiced by reason of counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). Counsel's conduct must have so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

### a. *Improper Waiver of Appellant's Right to a Speedy Trial Without Appellant's Consent*

■ Appellant claims that counsel waived his right to a speedy trial without his consent, denying him the effective assistance of counsel. The trial record indicates that appellant initially invoked his right to a speedy trial on February 2, 1981. On March 19, 1981, appellant waived that right. On June 4, 1981, the right to a speedy trial was addressed again, and again appellant waived that right. His own waiver of his right to a speedy trial cannot now be blamed on his attorney to support a claim of ineffective assistance of counsel.

### b. *Failure of Trial Counsel to Object to Juror Who Had Briefly Met Victims*

■ On the second day of trial, one juror told the judge that she had waited on the victims at a Montgomery Ward store. She said she thought she remembered the victims telling her about the robbery. When the court asked her, at a side-bar inquiry, whether she could base a verdict solely on what she heard in the courtroom, she said yes. Appellant's attorney did not object to the juror's presence on the jury.

Although a different attorney might have challenged the juror, there is insufficient evidence to conclude that failure to challenge in this case amounted to ineffective assistance of counsel. First, the juror satisfied the judge of her impartiality when she assured him that she could base her verdict on the evidence alone with no prejudice. Second, there is no evidence that the juror had discussed the alleged perpetrator's identity with the victims. Finally, it is quite possible that appellant's counsel's failure to challenge the juror may have in some way been a tactical decision.

In conclusion, appellant has failed to show that his trial counsel's actions were "outside the wide range of professionally competent assistance," or that the appellant was prejudiced. *Strickland v. Washington*, 466 U.S. at 687–90, 104 S.Ct. at 2064–66, 80 L.Ed.2d 674 (1984). Counsel's failure to challenge the juror does not undermine confidence in his conviction.

### c. *The Failure to Call Alibi Witnesses*

■ Appellant argues that his counsel's failure to call Naomi Webb as an alibi witness denied him effective assistance of counsel. The record shows, however, that counsel elected not to call Webb because of "glaring" inconsistencies in her proposed testimony. In his professional judgment, the witness would have done "more harm than good." Such a determination reflects the skill and judgment one would expect of a reasonably competent attorney. Denham has failed to show that counsel erred in not calling Naomi Webb or that other competent counsel would not have done the same thing.

Appellant also questioned his counsel's failure to call Joseph Gordon and Barbara Gordon. In his brief, however, he only mentions Barbara Gordon in the context of her testimony about Webb. Furthermore, Barbara Gordon did testify at trial. Appellant cannot blame trial counsel for not us-

ing Joseph Gordon as a witness. As discussed above, it was the court that disallowed his testimony.

Appellant has failed to show ineffective assistance of or that his case was prejudiced by poor counsel. His trial attorney made reasonable, informed tactical decisions. Our confidence in the jury's decision is in no way undermined by the performance of appellant's counsel.

The judgment is affirmed.