**Roger ALEXANDER, Appellant**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2006-CA-000772-MR.**

Court of Appeals of Kentucky.

March 30, 2007.

---

J. Guthrie True, Joseph P. Bowman, Johnson, True & Guarnieri, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, George G. Seelig, Assistant Attorney General, Frankfort, KY, for appellee.

Before THOMPSON and WINE, Judges; KNOPF,[1] Senior Judge.

*OPINION AND ORDER*

KNOPF, Senior Judge.

Roger Alexander was convicted in the Madison Circuit Court of four counts of diverting charitable funds in connection with bingo and other games of chance operated by the Waco Volunteer Fire Department in Madison County, for which he was sentenced to a total of one year of imprisonment, probated for five years, and a $500.00 fine. He advances four arguments in support of his contention that the judgment of conviction must be reversed: 1) that allowing a defense witness to invoke her Fifth Amendment privilege not to testify deprived him of his Sixth Amendment right to compulsory process; 2) that the manner of aggregating the charges of diversion by calendar year did not comport with the intent of the statutory prohibition regarding diversion of charitable gaming funds; 3) that the testimony of a rebuttal witness for the Commonwealth should have been disallowed for violation of the separation rule; and 4) that his conviction for a misdemeanor offense is barred by the statute of limitations. Finding no reversible error in any of these contentions, we affirm.

Alexander joined the Waco Volunteer Fire Department in 1986 and was first elected chief in 1989, serving in that capacity for approximately fifteen years. During Alexander's tenure as chief, the department was granted a charitable gaming license in March 2001 to operate bingo sessions at Jackpot Charity Bingo in Richmond and later at King of the Mountains Bingo in Berea. Alexander was designated chairman of the bingo operation.

The conduct of charitable gaming is closely confined by KRS Chapter 238. Of particular pertinence to this appeal is KRS 238.540(4) which provides:

> At least one (1) chairperson who is listed on the application for licensure shall be at each charitable gaming activity conducted by the charitable organization and shall be responsible for the administration and conduct of the charitable gaming activity. No person shall serve as chairperson for more than one (1) charitable organization. The chairperson shall be readily identifiable as the chairperson and shall be present on the premises continuously during the charitable gaming activity. Charitable gaming shall be conducted and administered solely by officers, members, and bona fide employees of the licensed charitable organization. Volunteer personnel, who may or may not be members of the licensed charitable organization, may be utilized if each volunteer is readily identifiable as a volunteer. **No**

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

**person engaged in the conduct and administration of charitable gaming shall receive any compensation for services related to the charitable gaming activities, including tipping. No net receipts derived from charitable gaming shall inure to the private benefit or financial gain of any individual. Any effort or attempt to disguise any other type of compensation or private inurement shall be considered an unauthorized diversion of funds and shall be actionable under KRS 238.995.** [Emphasis added.]

Because Alexander was designated chairman, he necessarily was a "person engaged in the conduct and administration of charitable gaming. . . ."

In October 2001, a compliance officer inspecting the department's records became aware that Alexander was being paid $50 per bingo session for providing security at the bingo facility and notified him that such payments were not permitted because of his position as chairman. When, in August 2002, Alexander admitted to the compliance officer that he was continuing to be paid for providing security services, the department was fined $1,000 by the Office of Charitable Gaming. During the period from 2001 to 2004, the department reported significant losses from the bingo operation and an audit showed missing funds amounting to approximately $100,000. Alexander was initially indicted on twelve counts of diverting charitable gaming funds in excess of $300. The first four counts were divided into yearly time periods, predicated upon charges that Alexander had paid himself illegally by diverting charitable funds "ostensibly for the purpose of providing security." The remaining eight counts of diverting charitable funds related to charges that Alexander misappropriated money from "Odd Ball Games" and "pull-tab" operations of the Waco Volunteer Fire Department. For reasons not addressed anywhere in the record, the summons issued on this indictment listed only eight counts of "Diverting Charitable Gaming Funds for financial benefit > $300."

The indictment was subsequently amended by changing the wording of the first four counts. Count One was amended to read as follows:

> Between January 1, 2001, and December 31, 2001, in Madison County, Kentucky, the above named defendant, Roger Alexander, committed the offense of Diverting Charitable Funds by receiving compensation or unlawfully giving more than $300.00, to himself and/or others, for the work performed at the Waco Volunteer Fire Department Bingo activity while he was engaged in the conduct and/or administrating of the Bingo sessions operated under the Charitable Gaming License of the Waco Volunteer Fire Department;

Counts Two, Three and Four charged identical conduct but related to the years 2002, 2003, and 2004. In its motion, the Commonwealth stated that if the court permitted the amendment of counts one through four of the indictment, it would move to dismiss the remaining counts. The trial court ultimately granted the Commonwealth's motion and Alexander proceeded to trial on the amended counts.

■ Alexander's first argument for reversal centers upon an alleged violation of his Sixth Amendment right to compulsory process, based upon the contention that the trial judge failed to make sufficient inquiry into a defense witness's assertion of her Fifth Amendment privilege. The day before trial the witness, Gloria Williams, appeared at the trial judge's office and informed his secretary that her counsel had directed her to invoke the Fifth Amendment if she was called to tes-

tify at Alexander's trial. The next morning, prior to the commencement of the proceedings, the trial judge informed Alexander's counsel who appeared to be aware of the problem. Williams had recently been indicted by a federal grand jury on charges that she had skimmed profits from the department's bingo operation, as well as being charged with several counts of tax evasion. Nevertheless, Alexander's counsel called Ms. Williams as a witness and, after she refused to testify, requested a hearing to test the validity of her claimed right not to incriminate herself. At a bench conference on the matter, the trial judge ruled that Alexander could not ask the witness any questions regarding the bingo operations during the time period covered by her federal indictment. Following the bench conference, the trial court informed the jury that the witness and three other potential defendants had been indicted by a federal grand jury on several different charges, some of which involved the bingo operation in question. He stated that the witness had the right not to testify as to anything which might incriminate her in the federal indictment. Alexander's counsel voiced no objection to the admonition and subsequently announced the conclusion of his case.

Citing *Combs v. Commonwealth,* 74 S.W.3d 738 (Ky.2002), Alexander now predicates error on the refusal of the trial court to permit him to conduct a "dry run" of the witness's testimony in order to determine whether her assertion of the Fifth Amendment privilege required exclusion of the entirety of her testimony. However, we are convinced that Alexander is not entitled to relief for the fundamental reason that his counsel in fact invited the error by calling a witness he knew would refuse to testify. In *Combs,* the Kentucky Supreme Court reiterated the principle established in *Clayton v. Commonwealth,* 786 S.W.2d 866 (Ky.1990), that it is improper to call a witness knowing she will refuse to testify:

> This Court has recognized that "neither the prosecution nor the defense may call a witness knowing that the witness will assert his Fifth Amendment privilege against self-incrimination," and we have applied this black-letter law in cases where a witness invokes the privilege in order to avoid answering *any* substantive questions.

74 S.W.3d at 742, footnote omitted. Here, Alexander called a witness knowing that she would refuse to testify and thereby invited the admonition the trial court gave the jury regarding her refusal to testify. Having improperly called the witness and brought her refusal to testify to the attention of the jury, Alexander cannot now complain of any improper handling of the witness's refusal to testify.

■ In any event, it is clear that Williams' refusal to testify encompassed "substantive questions." In *Adkins v. Commonwealth,* 96 S.W.3d 779, 789 (Ky. 2003), the Court explained the significance of the "substantive question" analysis:

> "Combs, supra, held that the trial court erred by refusing to allow a defense witness to take the stand simply because the witness indicated that she would assert her Fifth Amendment privilege in response to certain questions related to a **collateral issue.**" Although *Combs* dealt with the Compulsion Clause of the Sixth Amendment and this case implicates the Confrontation Clause, the same standards apply when a witness (whether called by the prosecution or defense) takes the stand intending to assert the privilege. The Sixth Amendment no more allows a defendant to keep a prosecution witness entirely off the stand than it allows the prosecution to keep a defense witness off the stand

simply because that witness intends to invoke his or her Fifth Amendment privilege **in response to some but not all questions.** [Citations omitted, emphasis added.]

Because it is undisputed that Williams' federal indictment stemmed from her affiliation with the department's bingo operation, her invocation of the Fifth Amendment with respect to any questions concerning her involvement with that operation could not be construed as relating to "collateral" matters. Furthermore, when the trial court specifically asked counsel if he had additional areas of questioning for the witness, he failed to articulate any. On the basis of these factors, as well as the fact that Alexander cannot advance his complaints with clean hands, we find no reversible error in the handling of Ms. Williams' refusal to testify.

Next, Alexander challenges as error the Commonwealth's aggregation of the offenses into felony counts by calendar year. Although he states that he was originally indicted on eight counts relating to eight separate occasions, review of the record does not bear this out. The indictment, signed by the foreman of the grand jury as a true bill, alleged twelve counts segregated by calendar year, each of which charged diversion of charitable funds in excess of $300. The Commonwealth's amendment merely changed the wording of the indictment, not the manner in which the offenses were grouped. But regardless, we find no error in the aggregation because Alexander's actions with respect to the bingo funds constituted an ongoing scheme of diversion. Separation by calendar year was not unreasonable in light of the annual reporting requirement.

In *Commonwealth v. Caudill,* 812 S.W.2d 158, 159 (Ky.App.1991), this Court rejected an argument almost identical to Alexander's regarding aggregation of several instances of theft of $8.00 driver's license fees to charge a felony:

> The allegations made by the Commonwealth in this case, if believed, certainly form a basis upon which a jury could reasonably conclude that appellee had a ***single continuous criminal intent and that each theft was part of a general larcenous scheme,*** to wit, to issue or renew licenses, "pocket" the fee, and destroy all records of the transaction, all for the ***single criminal purpose of embezzlement.*** [Emphasis added.]

Similarly, in *Smith v. Commonwealth,* 818 S.W.2d 620, 621–22 (Ky.App.1991), the Court not only adopted the *Caudill* rationale, but concluded that continuing schemes such as Smith's (and Alexander's) fall precisely within the purview of the type of conduct the legislature intended to prevent:

> In this case, Smith's conduct supports the same finding of a single continuous criminal intent as that in *Caudill.* This is the type of conduct that the legislature intended to prevent. Moreover, as the Commonwealth has pointed out, **Smith could have been indicted on multiple felony counts based on each weekly report submitted totaling $100.00 or more.**
>
> Smith's authorities in support of his argument that KRS 514.040 was designed to punish individual acts rather than a continuing course of conduct are distinguishable.... The statute under which the defendant was charged, KRS 514.110, was designed, according to the Supreme Court, to protect "an owner," and did not operate to prohibit a continuing course of conduct. [Emphasis added.]

We are convinced that these cases are dispositive of Alexander's complaint regarding aggregation, as well as any ques-

tion as to the propriety of separating of the offenses into calendar years. Given the annual reporting requirement set out in KRS 238.550, we perceive no error in separation of the counts into calendar years.

Alexander's third allegation of error focuses upon a violation of the separation rule. Alexander objected to the calling of a rebuttal witness, Darvis McIntosh, on the basis that he had been present during the testimony of other witnesses, as well as on relevancy grounds. McIntosh's testimony concerned a conversation in which Alexander allegedly offered him $48,000.00 in cash for a rental house he had on the market for $54,000.00. McIntosh also testified that Alexander had a bad reputation for truthfulness within the community and acknowledged that he had been present in the courtroom for a few minutes during Alexander's testimony.

The purpose of the separation of witnesses rule, now codified in KRE 615, is "to insure the integrity of the trial by denying a witness the opportunity to alter his testimony." *Reams v. Stutler,* 642 S.W.2d 586, 589 (Ky.1982). In *Jones v. Commonwealth,* 623 S.W.2d 226, 227 (Ky. 1981), the Supreme Court reiterated the longstanding rule concerning the trial court's discretion in passing on violations of the rule:

> We have uniformly interpreted the separation rule as providing a trial judge broad discretion to permit or refuse to permit a witness to testify who has violated the rule and have refused to intervene in such matters except in cases where that discretion has been abused.

More recently, in *Smith v. Miller,* 127 S.W.3d 644, 647 (Ky.2004), the Supreme Court made clear that "a violation without prejudice would not entitle a party to any relief." We are convinced that no abuse of the trial court's considerable discretion has been demonstrated in this case.

McIntosh's testimony regarding the $48,000.00 cash offer, while it directly contradicted Alexander's testimony, was about a subject which was merely tangential to the charges being tried and was thus unlikely to have been influenced by other testimony. Nor does it appear to have unduly prejudiced the jury which recommended the minimum possible sentence and requested that Alexander be probated. Under these circumstances, there appears to be no reasonable probability that the outcome of the trial would have been different had McIntosh's testimony been excluded. Any error, therefore, must be considered to be harmless and provides no basis for overturning Alexander's conviction.

In his final argument, Alexander presses the unpreserved contention that his misdemeanor conviction was barred by the statute of limitations. We agree with the Commonwealth that under RCr 9.54 Alexander was required to present to the trial court his objection to the form of the instruction allowing the jury to find him guilty of a misdemeanor. Having failed to do so, we are precluded from reviewing the matter. Furthermore, we cannot conclude that the matter rises to the level of palpable error, as the failure to raise the issue may have been a matter of trial strategy. *See, Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).

In conclusion, we turn to a procedural matter. Prior to oral argument, the Commonwealth requested leave to cite an unpublished opinion of this Court which was not final as of the date of oral argument. While a new section has been added to CR 76.28(4) allowing for the citation of unpub-

lished opinions upon a showing that there is no published opinion on point, we read that rule as relating only to unpublished opinions which have become final. Accordingly, the Commonwealth's motion to cite a non-final opinion is hereby DENIED.

The judgment of the Madison Circuit Court is affirmed.

ALL CONCUR.